REGAN, Judge.
Plaintiffs, Laney and Emma Stovall, in possession of two lots of ground together with the improvements thereon, instituted this suit against the defendant, Sonia Realty Company, Inc., endeavoring to recover damages in the sum of $1,000 for “maliciously * * * slandering the rights and possession of the plaintiffs * * * by * * * claiming that it is the owner of the property * * *, that they be quieted in their possession thereof and that the defendant be ordered to institute suit against the plaintiffs in revendication of its rights * * * to the property within thirty days after the judgment * * * shall become final and * * * in default of such action * * * that the defendant be forever barred from setting up any claim * * * to the property * *
Defendant pleaded the exceptions of no right or cause of action, which were overruled, and then answered and denied that it “is maliciously and without cause slandering the rights and possession of plaintiffs” to the property and asserted that it is the owner thereof having acquired title thereto on March 12, 1929, and that it has not parted therewith from the date of its acquisition until the present time.
The case was tried before a jury which rendered a “verdict for plaintiffs as prayed without any monetary damages” and, in conformity therewith, the trial court rendered judgment “in favor of the plaintiffs * * * and against the defendant * * decreeing that the plaintiffs * * * are the owners in full and unconditional ownership of, and that the defendant * * * has no right, title or interest of any nature or character whatsoever in the * * * property. * * * Plaintiffs’ claim for damages is denied.” Hence this appeal by the defendant.
The record reveals relatively simple facts which are, to a large extent, uncontro-verted. It is conceded that the Sonia Realty Company acquired a large tract of land in the Third District on March 12, 1929 and endeavored to develop a subdivision. Subsequently, as a result of depressed economic conditions, the company’s funds apparently became depleted and this land was sold to the City and State for delinquent taxes. In 1947 or 1948, Ben L. Lewis, a real estate broker, approached' Edouard Henriques, the Secretary and one of the two owners of the Sonia Realty Company, and suggested that they enter into an arrangement whereby the lots which remained in the foregoing subdivi- *414 síon might be marketed since purchasers were now available who would buy on the installment plan. The sale and subsequent installment collections were to be serviced by Lewis and when a purchaser had fully paid for his lot the property was to be redeemed for taxes and Henriques would then deliver title on behalf of the defendant. In this connection Henriques ■elucidated:
"I would sign a transfer and we would divide up the money by paying him (Lewis) the sum of 40% out of the net profit * * * and the other 60% would go to the company.”
This arrangement persisted for several years terminating only after the death of Lewis in 1951 and involved, so Henriques testified, seventy of seventy-five lots; all •of the transactions’ were handled by Lewis ■and Henriques in conformity with the foregoing understanding.
The plaintiff herein, Laney Stovall, anticipating the acquisition of! two lots of •ground in this subdivision in order to construct thereon a modest home for him and his wife, was informed by people living in the neighborhood thereof, that sales of lots along Lamanche Street were béing made by Lewis on the installment plan, and he, after contacting Lewis, whom he believed to be the owner, signed the following document in order to facilitate the acquisition •of the property in dispute.
“January 11, 1949
“Ben L. Lewis
New Orleans, La.
“Dear Sir:—
“This is to request you to arrange for me acquisition of Lot 17 and 18, Square 1254, Third District, New Orleans, square bounded by Lamanche, N. Miro, N. Tonti Streets and Caffin .Avenue. * * *
“I offer and agree to pay the sum of .Six Hundred, Seventy and No/100 Dollars for this property upon the ■following terms and conditions: Twenty Dollars cash, Twenty Dollars per month. * * *
******
(Signed) Laney Ray Stovall.
******
“This is to acknowledge above request and the $20.00 tendered herewith.
(Signed) Ben L. Lewis.”
The record reveals that this document was substantially the same type used in every transaction in which other sales were consummated through Lewis’ efforts in conformity with the arrangement with Henriques on behalf of the-defendant. It appears that Lewis, at the inception of their plans for marketing these lots, had submitted the form to Henriques, who now denies that he approved of or consented to its use. Before the property was paid for, Stovall, with the approval of Lewis, took possession of the lots and in 1948, erected thereon a small dwelling which is now designated by the municipal No. 2326 La-manche Street. When the property had been fully paid for as evidenced by thirty-two receipts of various amounts which, in substance, read “Received from Laney R. Stovall, Twenty Dollars, a/c Lots, Ben. L. Lewis,” Stovall requested that Lewis deliver title thereto. Lewis then informed Stovall that his attorney, Henriques, was absent from the City and the execution of a formal deed to the property must await his return. It will be recalled that plaintiffs believed Lewis to be the owner of the lots and never knew of defendant’s ownership until sometime before this suit was filed.
The record, in our opinion, in the final analysis, reflects that although Henriques knew or, at least, should have known that Lewis collected payments on account and in full for these lots, Henriques, on behalf of the defendant, refused to transfer title to the plaintiffs or to return the price paid by the plaintiffs to Lewis.
Henriques’ testimony was taken under oath in conformity with the Depositions *415 and Discovery Act, LSA-R.S. 13:3741, wherein he emphatically denied that Lewis had ever been given either oral or written authority to dispose of this particular property to the Stovalls, that he received any money as a result thereof, or that he ever knew of the purchasers’ identity or existence until shortly before suit was filed.
Plaintiffs contend that the document referred to hereinabove which they and Lewis signed, and the thirty-two receipts constituting payment in full, together with the proven relationship existing between Lewis and the defendant is sufficient to establish title in themselves to the property in compliance with the substance of LSA-Civil Code Article 2275, which reads:
“Every transfer of immovable property must be in writing; but if a verbal sale, or other disposition of such property, be made, it shall be good against the vendor, as well as against the vendee, who confesses it when interrogated on oath, provided actual delivery has been made of the immovable property thus sold.”
Defendant, on the other hand, simply points out that Lewis had no written contract of agency from the defendant to sell the lots and parol testimony is ineffectual to establish an agency to sell land.
While our moral sensibilities are offended by what occurred herein we find ourselves unable to grant plaintiffs the relief which they have prayed for, that is, title to this property. The sacramental rules for certainty and order relating to the disposition or acquisition of real property must always remain rigid, constant and, to a large extent, mechanical, in conformity with our philosophy of government and for the peace of mind and security of its people.
The civil law technique of flexibility permitting the individualization of each case in order to meet the needs of varying conditions and thus facilitate the attainment of justice is inapplicable where the ownership of real property rights are an issue.
The record and the deposition of Henriques conclusively reflects that Lewis possessed no written contract of agency from the defendant, Sonia Realty Company, Inc., to sell the lots referred to hereinabove. In fact, Henriques emphatically denied that Lewis had been given either oral or written authority to dispose of this property to the plaintiffs. It is, therefore, well settled that parol testimony is inadmissible to create the existence of aii agency to sell land, and the plaintiffs cannot establish title to the property in dispute by offering such proof. LSA-Civil Code Article 2992; Triangle Farms, Inc. v. Harvey, 1933, 178 La. 559, 152 So. 124, 125.
The tightness with which we are compelled to draw the judicial veil prevents us-from determining herein what rights, if any, plaintiffs may assert in another suit against defendant. However, the record' is embellished with an abundance of evidence relating to the existence of an agency or, possibly, a joint venture in that the defendant, through Henriques, entered into-an arrangement with Lewis, in consequence of which he sold seventy or seventy-five lots for the account of defendant. He employed substantially the same method of effecting the sale thereof as was used in-this instance. The division of money obtained from the sale was always the same— 40% was paid to Lewis and 60% was retained by the defendant. It may be that the foregoing pattern of conduct is encompassed by the rule of law expressed by the-Supreme Court, on rehearing, in Triangle Farms, Inc., v. Harvey, supra, wherein the organ of the Court stated:—
“It is well settled that parol testimony is inadmissible to establish an agency to sell land, * * *. At the same time, parol testimony is, without doubt, admissible to show that [defendant] received the purchase price, or part of same, paid by [plaintiff] under a verbal agreement to sell, since-[plaintiff] would have the clear right,. *416 under such state of facts, to recover the amount so paid.”
It is unfortunate that justice must be delayed herein, but, Judge Cardozo once very pertinently remarked — "Justice is not to be taken by storm. She is to be wooed by slow advances."
For the reasons assigned the judgment appealed from is annulled, avoided and reversed and it is now ordered that there be judgment herein in favor of the defendant, nonsuiting the claim of plaintiffs at their cost.
Reversed.